By the Court.—Sedgwick, Ch. J.
On the trial, both of the parties suffered the serious disadvantage that resulted from the death of defendants’ testator, before trial. The plaintiff was, for that reason, shut *400 off from proving any communications with the deceased, and the defendants could not have the benefit of giving the deceased knowledge of the transaction. The most of the allegations of the complaint necessarily depended upon oral statements, made to and by the deceased. There was, therefore, no direct proof of any part of the case, as stated by complaint, that is, of the employment of the deceased, of his promises, or declarations, or representations. Of course, it was clearly proven that the mortgages were second mortgages, and there was enough evidence to sustain the finding that these mortgages were not good. and sufficient securities. There was matter enough in the answer, if not in the evidence, to show that the de-. ceased had, in some part of the transaction, acted as agent or broker for the plaintiff, and, as such, had brought to plaintiff’s knowledge the fact that such an investment might be made for her. But there was no evidence to show what was the character of the employment, how broad it was, how much of confidence and trust was reposed in the deceased, or how much was left to his discretion. It might have been simply an employment to bring to her attention any opportunity for an investment, as to which she was to use her own discretion. There was no proof in the case as to plaintiff’s knowledge of what made or did not make good security, or that she could be imposed upon, or improperly induced, or that she in fact was induced to take the mortgages by anything said or done by the deceased. There was no proof that she was not able to competently judge for herself of the extent to which a security would be affected by the fact that it was a second mortgage. There was no proof from her that she did not know, at the time of the investment, that the mortgages were second mortgages. On her examination her attention was called to this by pointed questions of counsel on both sides. She either could *401 not, or did nob wish to give definite information on the point. Her own counsel asked her this question: “You were asked when you first learned that the bonds and mortgages were second, and you said you first learned it after the bonds and mortgages were executed.” Her answer was : “About that, Mr. Theodore Martine (the deceased) informed me, they were second mortgages.” This rather supports than negatives the idea that she knew they were second mortgages, from the deceased, at the time the investment was made.
The only other testimony that was relied on to show that the deceased did not inform her of the fact at the time, was an admission, gathered from his silence, in a conversation that was testified to by a third party. This gentleman testified that the plaintiff was a guest in his residence, at a time three years after the transaction ; that, in the middle of the afternoon, he went into his breakfast-room for a glass of water; that he there saw the plaintiff and the deceased talking; he apologized for interrupting them ; the plaintiff introduced him to the deceased, “ and I says, I believe I met you before once,” and I reminded him at the time where it was; they were then talking about these mortgages ; as I passed through, I heard Mrs. Whitney speak to Mr. Martine, and say she was very sorry that things were in the shape that they were. I said to Mr. Mar-tine, that I thought he had done very wrong in making these mortgages second mortgages, without consulting Mrs. Whitney before he had done so, and he said he was very sorry that he had had anything to do with it.” The witness testified that the deceased was rather feeble, that is, he showed signs of it. The circumstances of this interview show that the conversation was casual, and fail tó show that the deceased, at the time, was likely to be conscious that, unless he entered into an explanation with the gentleman then intro *402 duced to him, it would be an admission on his part, of the truth of what was said to him, and his answer indicated an avoidance of discussion. This scintilla of evidence should not have the weight of solid proof, especially when considered with plaintiff’s testimony, that, about the time of the execution of the mortgages, the deceased did tell her that they were second mortgages.
This leaves, as the sole ground of recovery, the fact that the security was second mortgages, and that the deceased, under some kind of employment that is not defined, took some part that is not defined, in the transaction.' The learned counsel for the plaintiff argues that this throws the burden of proof irpon the defendants to show that the deceased’s action was proper. This does not seem to be valid, for, at least, it does not appear that the parties were not on equal ground, nor that the plaintiff reposed any confidence ,in the deceased, nor that the relations of the parties were such that they imply that confidence was reposed in, or trust devolved upon the deceased.
Whatever may be the hardships of the particular case, or the suggestions from slender testimony, that it is possible, or even likely, that the plaintiff may have some cause of action, she ought not to have a judgment in her favor that does not rest upon sufficient proof.
I am also of the opinion that the plaintiff was not entitled to have a money judgment for the full amount of her investment, without proof that she had tendered to the defendants the bonds and mortgages. The former were not shown to be worthless, if that were sufficient, in a case where she seeks to make the defendants liable for the amount alleged by her to have been placed in the hands of the deceased as her trustee. Under any circumstances, the judgment in the case should have provided for the delivery of the bonds *403 and mortgages to the defendants, in the proper contingency (Lewis’ case, 4 Edw. Ch. 622, 634).
Judgment is reversed, and a new trial ordered, with. costs of the appeal to the appellant to abide the event,
Freedman, J., concurred.